## Isaac, Appellant, v. Continental Casualty Company.

Argued January 15, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*E. Jerome Brose,* with him *Karl K. LaBarr, Jr.,* and *Brose, Poswistilo & LaBarr,* for appellant.

*Stanley E. Stettz,* with him *Fackenthal, Teel & Stettz,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 22, 1971:

Appellant, Ralph Isaac, brought an action of assumpsit seeking to recover on a sickness and accident indemnity policy issued by appellee insurance company. The company defended on the grounds that the appellant had procured a second policy and, therefore, appellant had no right to recover on the first policy. At the conclusion of a jury trial held to decide the issue, the court submitted to the jury the following special question relating to the replacement issue: "As of December 31, 1963, did the plaintiff intend to procure a second policy from the defendant, procure a second policy, substitute it for the first policy and consent or agree that the second policy should take the place of the original policy?"

The jury answered the question in the affirmative and the court entered a verdict for the insurance company. After denial of his motions for a new trial and judgment n.o.v., and entry of judgment on the verdict, appellant filed this appeal.

In considering a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Nor will we reverse the grant or refusal of a new trial unless the court below committed an error of law or a clear abuse of discretion.

In the light of these oft repeated standards of review, appellant is clearly not entitled to judgment n.o.v., nor can we find an abuse of discretion or error of law which controlled the outcome of the case.

The facts developed at trial are as follows: On or about May 3, 1960, appellant, Ralph Isaac, was issued a sickness and accident indemnity policy (Policy No. 1) executed and delivered by appellee insurance company. The policy provided certain monthly indemnities for hospitalization and total disability. The premiums were payable semi-annually on June 1 and December 1, respectively, and the policy provided for a thirty-one day grace period during which the policy would continue in force ". . . unless not less than five days prior to the premium due date the Company has delivered to the insured or has mailed to his last address written notice of its intention not to renew this policy beyond the period for which the premium has been accepted." No written notice of such intention was ever given appellant, so that when a premium was paid June 1, 1963, appellant was covered through the semi-annual period ending December 1, 1963, plus the thirty-one day grace period ending January 1, 1964, unless Policy No. 1 was subsequently replaced by Policy No. 2.

The record further shows that sometime during October or November of 1963, appellant sought a review of his entire insurance program by a general insurance agent, Paul Ford. Appellant specifically asked about

a new type of accident and health policy which the company was advertising. The agent testified he talked to the company's brokerage manager about an "exchange of policies and was informed there was an "improved policy" uncontestable and noncancellable, with a higher premium, however. According to Mr. Ford, after he explained this to appellant, appellant authorized him to secure the new policy. Appellant's original policy (Policy No. 1) was forwarded to the company's field office. On November 7, 1963, appellant signed an application for the new policy. The new policy (Policy No. 2) was issued with an effective date of December 1, 1963. It was forwarded to the agent who mailed it to appellant on December 31, 1963, the same day he took sick. The new policy was in effect on December 31, 1963, which explains why appellant has already recovered a verdict on Policy No. 2 after suit brought in May, 1965. Significantly, the complaint in that action stated that the second policy was issued "in renewal of" the original policy.

As we said in the case of *Harty v. Stand. Accident Ins. Co.*, 394 Pa. 358, 147 A. 2d 421 (1959), citing *Scheel v. German-American Insurance Co.*, 228 Pa. 44, 76 Atl. 507 (1910) : "As the defense rests solely upon the allegation that the policy was cancelled by the substitution of the Hartford company policy for a like sum, the defendant must aver and show, not only that the assured intended to, but did procure from the Hartford Company a policy, substitute it for the defendant's policy, and consent or agree that the substituted policy should take the place of the defendant's policy. . . ."

A close examination of the record indicates that there was sufficient evidence of replacement or substitution to permit the jury to pass upon the question.

Judgment affirmed.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.