630 A.2d 511

**Frank GIOSA and Elaine Giosa**

v.

**SCHOOL DISTRICT OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1992.

Decided Aug. 5, 1993.

490

492

Andrew Siegeltuch, for appellant.

Paul J. Drucker, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, PELLEGRINI and KELLEY, JJ.

CRAIG, President Judge.

The School District of Philadelphia appeals an order of the Court of Common Pleas of Philadelphia County denying the district's post-trial motions and entering judgment in favor of plaintiff Frank Giosa based on a jury verdict finding the school district 100% negligent for personal injuries which Giosa sustained when he fell on a school district sidewalk.

The school district raises the following issues on appeal:

(1) whether the trial court erred in allowing the jury to determine the school district's negligence;

(2) whether Giosa failed to establish a breach of a duty owed to him, in that he was a licensee upon the district's property who failed to allege wanton and willful conduct on the district's part, and in the alternative, if Giosa was an invitee rather than a licensee, whether the district is not liable because the condition of the sidewalk that caused his injury was known and obvious to him;

(3) assuming the district owed a duty of care to Giosa, whether Giosa assumed the risk, and alternatively, if the doctrine of assumption of the risk does not apply as a matter of law, whether the trial court erred by not charging the jury on this issue;

(4) whether *Giosa v. School District of Philadelphia,* 127 Pa.Commonwealth Ct. 537, 562 A.2d 411 (1989), (*Giosa I* ), *petition for allowance of appeal denied,* 525 Pa. 629, 578 A.2d 416 (1990), upon which the result in this case is based, was wrongly decided in light of the Pennsylvania Supreme Court's decision in *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989);

(5) whether the trial court misapplied *Giosa I* in the present case by failing to consider the question of whether the evidence offered at trial was sufficient to establish that a dangerous condition *of* the sidewalk existed;

(6) whether the trial court erred in precluding cross-examination of Mrs. Giosa regarding a Petition for Protection from Abuse she had filed against her husband alleging physical,

mental and verbal abuse, in that the testimony which the district's counsel sought to produce was for the purpose of impeaching the witness with regard to her loss-of-consortium claim;

(7) whether the trial court erred in precluding cross-examination regarding a disciplinary hearing involving Giosa through which the district's counsel sought to develop testimony regarding Giosa's motive for filing suit;

(8) whether the jury's award of $620,000 was excessive where Giosa's vocational expert testified that there were jobs available that he could perform;

(9) whether the trial court erred in not reducing Mrs. Giosa's loss-of-consortium verdict in light of the couple's history of physical and emotional abuse;

(10) whether the trial court erred in not deducting disability and retirement benefits under the Judicial Code; and

(11) whether the trial court's imposition of Rule 238 delay damages in this case was improper and unconstitutional.

## FACTS AND PROCEDURAL HISTORY

On February 14, 1983, Frank Giosa sustained injuries when he fell on a sidewalk which was covered with snow and ice from a 21–inch snowstorm in Philadelphia. The accident occurred at South Philadelphia High School. At the time of the accident, Frank Giosa and other members of Local 1201, International Brotherhood of Firemen and Oilers Union were on strike against the School District of Philadelphia. Frank Giosa and his wife Elaine Giosa sued the School District of Philadelphia in the Court of Common Pleas for injuries Mr. Giosa suffered from the accident.

The school district filed a motion for summary judgment, asserting the defense of governmental immunity, arguing that the accumulation of snow and ice on a sidewalk does not constitute a "dangerous condition" under section 8542(b)(7) of the Judicial Code, 42 Pa.C.S. § 8542(b)(7), which limits the circumstances under which a local government may be held

liable for injuries resulting from conditions on its property. The trial court agreed with the district and granted the district's motion.

This court reversed the trial court's decision, holding that, contrary to the trial court's conclusion, an accumulation of snow and ice could result in a dangerous condition *of* the sidewalk under the statutory exception to government immunity. *Giosa I,* supra.

The case was tried by a jury, which returned a verdict in favor of the Giosas in the amount of $673,040, as follows: $15,540.00 for medical expenses, $620,000 for loss of earnings, $10,000 for past, present and future pain and suffering, and $27,500 for Mrs. Giosa's loss-of-consortium claim.

Pursuant to § 8553(d) of the Judicial Code, the trial court deducted $9,415.40 from the verdict award for medical expenses paid for by Giosa's insurance company. In addition, the court assessed delay damages against the school district in the amount of $360,311.63, based not on the amount of the total verdict of $673,040, but on the amount of $500,000, to which the trial judge reduced recovery under § 8553(b) of the Code.

The school district filed post-trial motions, which the trial court denied. This appeal followed.

## ANALYSIS

### 1. The Jury's Determination of the School District's Negligence

The school district appeals the trial court's denial of a judgment notwithstanding the verdict, contending that the jury should not have been permitted to determine whether the school district was negligent. The district argues that the question of whether the school district was negligent was for the trial court because the school district workers were on strike, and because there had been a severe storm.

Section 8542(c) of the Judicial Code states:

As used in this section the amount of time reasonably required to take protective measures, including inspections required by law, shall be determined with reference to the actual equipment, personnel and facilities available to the local agency and the competing demands therefor.

The district relies on the Supreme Court's application of § 8542(c) in *Beebe v. City of Philadelphia*, 312 Pa. 214, 167 A. 570 (1933). However, *Beebe* is distinguishable from the present case. In *Beebe*, the plaintiff brought an action against the City of Philadelphia to recover damages for injuries which the plaintiff sustained when he fell upon a sidewalk. The plaintiff alleged that the city negligently had allowed snow and ice to accumulate in hollows and ridges. The plaintiff's injuries occurred two days after a severe snowstorm which left over ten inches of snow on the ground.

The Supreme Court reversed the trial court's judgment, concluding that the city could not be charged with negligence because it had neither constructive nor actual notice of the alleged defective condition of the pavement.

The court reasoned that the city, as a *secondary* owner, could not be charged with negligence under § 8542(c) because the city did not have sufficient time, between the time of the snowfall and the accident, to direct the owner of the property to clear the pavement, or to take steps to clear the sidewalk itself if the city became aware that the owner had not done so. The court noted that the city did not have actual notice of the defective condition of the pavement merely by virtue of the fact that it had a crew of men in the vicinity engaged in clearing snow.

The court further stated that the jury could not substitute its judgment for the city's in determining what sections of the sidewalk should have received first attention, given the size of the city. Therefore, that court did not allow the jury to decide the issue of negligence on the part of the city.

In the present case, unlike *Beebe*, the school district is the *primary* owner of the pavement in question, so that its liability is not *secondary*.

Thus, in the present case, the trial court properly allowed the jury to decide the issue of the district's negligence. The trial court correctly charged the jury that, in determining the school district's negligence under § 8542(c), the jury must judge the time factor based upon the actual equipment, personnel and facilities available and the competing demands of the school district.

■ Judgment notwithstanding the verdict is an extreme remedy, which a trial court may properly enter only where, after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds could fail to agree that the verdict was improper. *Pallante v. City of Philadelphia*, 133 Pa.Commonwealth Ct. 441, 575 A.2d 980 (1990). In the present case, the trial court properly denied the district's motion.

### 2. Breach of Duty—Willful and Wanton Conduct

The school district also contends that Giosa failed to prove breach of any duty owed to him by the school district. The school district claims that, as a licensee, Giosa used the land for his own benefit or accommodation, and therefore that, because the Giosas did not allege in their complaint any willful and wanton conduct on the part of the school district, their claim cannot stand.

The school district alternatively argues that, even if Giosa was a public invitee of the school district, and was thus owed the highest duty of care, Giosa still cannot recover because, under § 343A of the Restatement (Second) of Torts, if a danger is obvious to an invitee, he cannot recover.

■ However, because the school district did not raise these issues in any of its post-trial motions, it cannot now raise them before this court. Only issues that a party specifically has raised in post-verdict motions are preserved to be considered on appeal. *Cucchi v. Rollins Protective Services Company*, 377 Pa.Superior Ct. 9, 546 A.2d 1131 (1988).

### 3. *Assumption of the Risk*
#### a. As a Matter of Law

The school district argues that, assuming it owed a duty of care to Giosa, recovery is barred under the doctrine of assumption of risk because Giosa fully understood the risk involved in walking on the sidewalk, and yet voluntarily chose to encounter it.

In *Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 437 A.2d 1198 (1981), a plurality opinion of the Pennsylvania Supreme Court negated the doctrine of assumption of risk, concluding that the doctrine was confusing and also unnecessary. The Supreme Court's opinion reasoned that assumption of the risk is no longer viable because:

> " "[C]ases which have evoked the doctrine to deny plaintiff's recovery would have produced the same result either by (1) the court's determination that, as a matter of law, defendant owed plaintiff no duty, or (2) by the jury's determination that plaintiff's own negligent conduct was a substantial factor in bringing about the harm he suffered." "

*Id.* at 613, 437 A.2d at 1209, quoting *Pennsylvania Suggested Standard Jury Instructions,* § 3.04 (1981).

The opinion noted that issues should be limited to negligence and contributory negligence because the difficulties of applying the doctrine of assumption of risk outweighs the benefits.

In *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983), the Supreme Court appeared to depart from *Rutter* by reversing a trial court decision because the trial court had not given an assumption-of-risk instruction to the jury. However, in *Howell v. Clyde,* 383 Pa.Superior Ct. 611, 557 A.2d 419 (1989), (*Howell I*), the Superior Court reconciled the two cases by noting that both cases stand for the proposition that a finding that a plaintiff assumed a risk is equivalent to a finding that a defendant owes no duty of care to a plaintiff.

In *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993), (*Howell II*), a plurality decision by the Pennsylvania Supreme Court, which reversed *Howell I,* and in which two justices dissented, two concurred, and two joined in the opinion an-

nouncing the judgment of the court, that opinion stated that (1) the assumption of risk policy that bars a plaintiff's recovery if he was in part at fault, conflicts with comparative negligence statutes, and thus should be abolished, but (2) comparative negligence statutes have not abolished implied assumption of risk in situations where the plaintiff voluntarily and intelligently engages in an activity which the plaintiff knows is hazardous in ways that subsequently harm the plaintiff, and this implied assumption of risk is a part of the duty analysis for the trial court. *Id.* at 160–162, 620 A.2d at 1112.

In *Carrender,* the Supreme Court found that the defendant, an owner of a private parking lot, owed no duty to the plaintiff where the dangerous condition of the lot was obvious to the plaintiff. Thus, assumption of risk could apply as a valid defense only where the record fails to establish a duty owed by the defendant to the plaintiff. *Carrender,* 503 Pa. at 188, 469 A.2d at 125; *Howell I,* 383 Pa.Superior Ct. at 614, 557 A.2d at 421, citing *Malinder v. Jenkins Elevator & Machine Company,* 371 Pa.Superior Ct. 414, 538 A.2d 509 (1988).

The school district relies on *Ott v. Unclaimed Freight Company,* 395 Pa.Superior Ct. 483, 577 A.2d 894 (1990), in arguing that Giosa assumed the risk of his injury. In *Ott,* the plaintiff was injured when she slipped and fell on a patch of ice in a private parking lot, and brought suit against the landlord. The Superior Court held that, if a plaintiff fully understands a specific risk, and voluntarily chooses to encounter it, he will be found to have assumed the risk of his injury.

However, *Ott* is distinguishable from the present case because the landlord in that case was the possessor of private property, not a public sidewalk. The court in *Ott* noted that an owner of private property owes no duty to trespassers to maintain a parking lot free of snow and ice. Specifically, the court noted that the duty owed by a possessor of land to the public to maintain sidewalks which border a public walkway is different from the situation involving a private parking lot.

■ In the present case, because the school district owed Giosa a duty to keep the public sidewalks clear from any

dangerous conditions, the doctrine of assumption of risk—even if now viable under *Howell II*—does not apply.

### b. Refusal of Charges to the Jury

The school district contends that, even if Giosa did not assume the risk as a matter of law, the trial court erred in refusing the school district's Points for Charge Nos. 7, 8 and 9, on assumption of risk.

In reviewing jury instructions to determine whether a trial court has committed reversible error, appellate courts must consider the general effect of the charge as a whole rather than merely isolated excerpts. *Commonwealth v. Sweger*, 351 Pa.Superior Ct. 188, 194, 505 A.2d 331, 334 (1986). A trial court's charge to the jury will be upheld if it adequately and accurately reflects the law. *Brill v. Systems Resources, Incorporated*, 405 Pa.Superior Ct. 603, 592 A.2d 1377 (1991).

The school district's Request No. 7, based on *Ott*, as discussed above, does not apply to the present case. The court in *Ott* held that the plaintiff assumed the risk of dangerous conditions which were obvious to her on a private parking lot. In the present case the school district owed Giosa, a member of the general public, a duty to keep the sidewalk free from dangerous conditions.

Request No. 8, based upon *Burch v. Sears, Roebuck & Company*, 320 Pa.Superior Ct. 444, 467 A.2d 615 (1983), asked for a charge to the jury that Giosa assumed the risk if he placed himself in danger, and was consciously aware of the danger. *Burch*, which involved a *products liability* claim in which plaintiff's hand was damaged by a lawnmower, does not apply to the facts of this case, where there is a breach of a common law duty to a member of the general public.

Lastly, because this court concludes that assumption of risk does not apply in the present case, the school district's Request No. 9, seeking to instruct the jury that Giosa's own testimony, as to what he knew, should not be conclusive on the issue of assumption of the risk.

The trial court instructed the jury on contributory and comparative negligence, stating that the jury should decide whether it believed the actions or inaction of the school district constituted negligence, or whether Giosa's own action constituted negligence and was a substantial factor in bringing about his own injuries.

As the *Rutter* court noted, an instruction on contributory negligence reaches the same result as an instruction on implied assumption of risk, which is not required under the facts of this case. The trial judge instructed the jury that, if it found that Giosa had a reasonable alternative route which a reasonably prudent person would have recognized as safer, it could find the plaintiff negligent. The jury took all of the evidence into consideration and determined that the school district was 100% negligent.

This court concludes that the trial court did not commit error in its charge to the jury because that charge adequately and accurately reflected the law.

### 4. Giosa I

The school district also contends that this court should overrule its decision in *Giosa I* because it is inconsistent with *Snyder v. Harmon*, supra, and later cases.

In *Giosa I*, the trial court granted summary judgment for the school district based on a theory of governmental immunity under section 8541 of the Judicial Code. This court reversed the trial court's decision. We ruled that immunity did not apply in this case because of the "sidewalk" exception of the Code. The school district raised the same issue it raises here.

In Pennsylvania, an appellate court will not reconsider issues that were decided in a previous appeal between the same parties. The previous decision is the law of the case, and these same issues litigated in the earlier appeal cannot be opened for re-litigation. *Albright v. Wella Corporation,* 240 Pa.Superior Ct. 563, 359 A.2d 460 (1976). The previous decision on appeal in a case becomes the law of the case and

cannot be reviewed. *Burke v. Pittsburgh Limestone Corporation*, 375 Pa. 390, 100 A.2d 595 (1953).

In the present case, because the school district presented the same issues in this case as in *Giosa I,* this court will not address the district's argument regarding Giosa I.

### 5. The Giosa I Standard

The school district also argues that judgment notwithstanding the verdict is proper because the trial court misapplied *Giosa I* to the present case. The district contends that the trial court should have determined whether the accumulation of ice was a condition *of* or a condition *on* the sidewalk, in accordance with *Giosa I,* in order to properly decide whether the school district was immune from liability.

■ In the district's post-trial motions, it argued that *Giosa I* was decided wrongly, but did not raise the issue of whether the trial court misapplied the holding of *Giosa I* to the present case. Because the district did not specifically address the latter issue in the motions, it cannot now do so. *See Cucchi v. Rollins Protective Services,* supra.

### 6. Cross–Examination of Elaine Giosa

The school district argues that the trial court erred in prohibiting cross-examination of Elaine Giosa concerning sworn averments in a petition for protection from abuse which she filed against her husband in 1987.

At trial, the Giosas claimed that Elaine Giosa sustained a loss of consortium because of her husband's accident. Mr. Giosa testified that he and his wife had a normal relationship until the accident occurred. The Giosas claimed that the accident caused their marriage to deteriorate and lead to their separation in December of 1987.

After Mrs. Giosa testified on direct examination that her marriage deteriorated because of her husband's injuries, the school district confronted her on cross-examination with the petition for protection. Mrs. Giosa admitted filing the petition in 1987, and that the petition contained allegations that her

husband had physically, mentally, and verbally abused her and their two children over the previous eight years. (R. 206)

Mrs. Giosa contended that her attorney must have erred in putting the averments of eight years of abuse in the petition, and that her husband had never physically abused her. (R. 206–207a) However, after the foregoing facts concerning the petition were on the record before the jury, the trial court sustained objections on behalf of the Giosas when counsel for the school district sought to question Mrs. Giosa about statements in the petition regarding: 1) Mr. Giosa keeping weapons at home, 2) Mr. Giosa cursing Mrs. Giosa and threatening to pull her out of church and kill her, and 3) Mrs. Giosa seeking medical treatment as a result of Mr. Giosa's abusive behavior. (R. 211a–216a)

The Giosas argue that the trial court was correct in ruling that the prejudicial impact of the testimony outweighed its probative effect, and that sustaining the objections was proper in light of the fact that the court instructed the jury 1) to consider the loss-of-consortium claim only from the time of Mr. Giosa's accident up until the time that the petition for protection from abuse was filed, and 2) that "you are not to consider, nor should you render any judgment, if you find from the testimony that the Giosa's are entitled to anything, that this marriage was caused to be split, to deteriorate or any other evidence you wish to conjure in your own mind as a result of this accident." (R. 224a–225a)

■■■■ An appellate court will reverse a trial court's decision to limit the scope of cross-examination only where there is an error of law or a prejudicial abuse of discretion. *See Robertson v. Atlantic Richfield Petroleum Products Company*, 371 Pa.Superior Ct. 49, 537 A.2d 814 (1987). Although the scope of direct examination limits the cross-examination, the scope of cross-examination includes the right to examine the witness on any facts tending to refute inferences or deductions arising from witness testimony on direct examination. *McGowan v. Devonshire Hall Apartments*, 278 Pa.Superior Ct. 229, 420 A.2d 514 (1980).

■ This court concludes that the trial court properly exercised discretion in sustaining objections to questions regarding portions of the abuse petition concerning Mr. Giosa's alleged past abuse of his wife. As noted above, the trial judge's charge limited the jury's consideration of consortium and instructed the jury *not* to treat the accident as a cause of marital separation. Pursuing details of the charges in the petition would have been prejudicial rather than relevant.

### 7. Cross Examination on a Previous Dispute with the School District

■ The school district also argues that the trial court abused its discretion in prohibiting cross-examination of Mr. Giosa concerning a dispute he had with the school district before his accident. The school district sought to introduce into evidence a letter dated January 12, 1983, which the school district sent to Mr. Giosa regarding a disciplinary hearing scheduled for him after his return to work from the strike. The trial court ruled that the letter was inadmissible because 1) of its prejudicial effect and, 2) the letter would create a trial within a trial on collateral issues.

The school district argues that the letter was important to show an alternative motive for Giosa's filing suit against the district.

This court agrees with the trial court that the admission of the letter would have been unduly prejudicial, and would have brought up matters which did not pertain to this case. Thus the trial court did not err in not admitting the letter into evidence.

### 8. Frank Giosa's Award For Lost Earnings

The school district contends that the jury's verdict of $620,-000 to Mr. Giosa for past and future lost earnings is excessive, contrary to the weight of the evidence, and should shock the court's sense of justice. Because Giosa testified that he made only three attempts to find work in the eight-and-one-half year period following his injury, and because there was testimony

that there were jobs available for which Mr. Giosa was suited, the school district argues that the verdict is shocking.

 The granting or refusal of a new trial because of excessiveness of the verdict is within the discretion of the trial court. *Springer v. George*, 403 Pa. 563, 170 A.2d 367 (1961). A verdict should not be set aside unless it is so grossly excessive as to shock the court's sense of justice. *Kane v. Scranton Transit Company*, 372 Pa. 496, 94 A.2d 560 (1953).

Reviewing courts consider a variety of factors in determining whether a particular verdict is excessive and constitutes and abuse of discretion by the trial court. However, it is difficult to compare the facts of any one case with another, because each is unique, and a reviewing court should apply only those factors it finds to be relevant in determining excessiveness. *Mineo v. Tancini*, 349 Pa.Superior Ct. 115, 502 A.2d 1300 (1986).

 In determining whether a particular verdict is excessive, courts may consider the following factors: 1) the severity of the injury; 2) whether plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of the plaintiff; 3) whether the injury will affect the plaintiff permanently; 4) whether the plaintiff can continue with his or her employment; 5) the amount of plaintiff's out of pocket expenses; and 6) the amount plaintiff demanded in the original complaint. *Kemp v. Philadelphia Transportation Company*, 239 Pa.Superior Ct. 379, 361 A.2d 362 (1976).

 In the present case, Dr. Spergel, a vocational consultant, provided the only testimony at trial regarding Mr. Giosa's lost earnings. Dr. Spergel testified that Giosa's lost earnings ranged from $381,151.92 to $480,558.57, which did not include work benefits, pay raises, cost of living, or lost earnings Giosa had already suffered since the accident. Dr. Ronald Green, an orthopedist, also testified that Giosa eventually will need a knee replacement. The jury awarded Giosa an additional $15,540 for his medical expenses, and $10,000 for his pain and suffering.

The trial court, in accepting the jury's award, noted the award was not shocking to the conscience of the trial court in light of the uncontradicted testimony that the plaintiff was totally disabled from his previous occupation. (R. 763a)

In considering all of the factors set out in *Kemp* regarding excessive jury awards, this court concludes that the evidence supports the trial court's determination that the jury's award for lost earnings is not shocking to the court's sense of justice, and does not warrant a new trial.

### 9. Elaine Giosa's Loss of Consortium Award

The school district argues that Mrs. Giosa's loss of consortium award of $27,500 is excessive in light of alleged past abuse from her husband.

Because this court concluded above that the trial court did not err in excluding testimony concerning details of Mrs. Giosa's abuse petition, we will reject the claim of excessive damages in this respect.

### 10. Disability and Retirement Benefits

The school district argues that, even if this court determines that the verdict is not improper or excessive, this court must reduce the award in accordance with sections 8553(b) and (d) of the Judicial Code.

The jury awarded Giosa a total of $673,040, as follows: $15,540 for medical expenses, $620,000 for loss of earnings, $10,000 for past, present and future pain and suffering, and $27,500 for Mrs. Giosa's loss-of-consortium claim.

Pursuant to § 8553(d) of the Judicial Code, the trial court deducted $9,415.40 from the verdict award for medical expenses paid for by Giosa's insurance company. The court denied the school district's request for further reductions of 1) $5,900 for disability benefits Giosa received from his personal insurer, and 2) $57,931.98 for disability retirement benefits that Giosa received from the Public School Employees Retirement System.

The school district argues that *both* disability benefits should have been deducted from the jury award pursuant to § 8553(d). Subsections 8553(c) and (d) state in relevant part:

(c) **Types of losses recognized:—Damages shall be recoverable only for:**

(1) Past and future loss of earning and earning capacity.

(2) Pain and suffering in the following instances ...

(d) **Insurance Benefits.**—If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under Subsection (c), the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant.

After deducting the amount of the medical insurance, the trial court then reduced the award to $500,000 in accordance with § 8553(b) of the Act, which requires that damages, when aggregated, should not exceed that amount.

The trial court denied the school district's request for disability deductions based on payments from Giosa's personal insurer, concluding that the school district did not present any evidence that it was legally entitled to the deduction as a third-party beneficiary or otherwise. The court denied the retirement benefits deduction, stating that the school district presented no evidence as to its legal right, either express or implied, to a subrogation interest in the benefits.

 This court concludes that the trial court correctly deducted the amount of Giosa's medical expenses which were paid under an insurance policy, pursuant to § 8553(d). The trial court correctly excluded a deduction for the disability retirement benefits that Giosa received from the Public School Employees Retirement System, which were not received under an insurance policy. *See City of Wilkes–Barre v. Zalendonis,* 125 Pa.Commonwealth Ct. 392, 557 A.2d 836 (1989).

 However, the trial court erred in *not* deducting the $5,900 disability benefit which Giosa received from his person-

al insurance policy with Prudential Life because that benefit was: 1) paid from an insurance policy; and 2) the insurance policy covered a disability which Giosa sustained as a result of his injury, which would have otherwise entitled him to damages under § 8553(c), i.e. (c)(1) past and future loss of earning and earning capacity.

The school district also contends that the trial court erred under § 8553(b) because, in order to mold the verdict properly, the court should have first reduced the award to $500,000, and then subtracted the insurance amounts under § 8553(d).

When interpreting a particular statute, this court seeks to ascertain and effectuate the intention of the General Assembly. Under the Statutory Construction Act, "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing the spirit." 1 Pa.C.S. § 1921(b). In addition, the title of a statute, although not controlling, may be considered in the construction of that statute. 1 Pa.C.S. § 1924.

In the present case, § 8553(d) states that the amounts of the insurance benefits which a claimant receives "shall be deducted from the amounts of damages which would *otherwise be recoverable* by such claimant." Section 8553(b), which is entitled, *"Amounts Recoverable,"* requires that the total amounts recoverable against a municipality "shall not exceed $500,000 in the aggregate."

▮ In applying the rules of statutory construction to § 8553(b) and (d), this court concludes that the drafters intended that the total damages should first be reduced to $500,000 as the "damages recoverable," and that any insurance benefits received under subsection (d) should then be deducted from that $500,000.

Thus, this court concludes that, in the present case, subject to delay damages discussed below, the Giosas are entitled to $484,684.60, consisting of the molded verdict of $500,000 minus the medical insurance benefits of $9,415.40 minus the personal disability insurance benefits of $5,900.

### 11. *Rule 238 Delay Damages*

At a post-trial hearing in this case, the parties stipulated the number of days of delay attributable to Giosa in bringing this case to trial. The delays included various requests for continuances by Giosa, during the pendency of the case. Those time periods were then deducted from the total delay period in determining the number of days of delay for which the school district was accountable. The trial court awarded delay damages in the amount of $360,311.63 to Giosa.

The school district argues that, under the facts of this case, application of delay damages is either barred or limited. The school district contends that, because the delay in bringing this case to trial primarily resulted from the congestion and backlog in the Court of Common Pleas of Philadelphia County, and because the trial court originally granted the district's motion for summary judgment when the district asserted the defense of governmental immunity in *Giosa I*, it cannot be charged with delay damages before July 17, 1989, the date on which this court reversed the trial court's order granting the school district's motion for summary judgment.

Under Pa.R.C.P. No. 238, a factfinder, in making a decision on a plaintiff's entitlement to delay damages, must consider the parties' respective responsibilities in requesting continuances, the parties' compliance with the rules of discovery, the parties' respective responsibilities for delay necessitated by joinder of additional parties, and other pertinent factors. *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986). Rule 238 states:

(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial or in the award of arbitrators appointed under section 7361 of the Judicial Code, 42 Pa. C.S. § 7361, and shall become part of the verdict, decision, or award.

In subsections (b)(1) and (2) of Rule 238, the period of time for which delay damages shall be calculated expressly excludes "(1) any periods of time after which the defendant has made a written offer of settlement, the offer is continued in effect for at least ninety days or until the commencement of trial, whichever first occurs, the offer is rejected by plaintiff, and the plaintiff does not recover more than 125% of the offer; and (2) any periods of time during which the plaintiff caused delay of the trial." The drafters of the rule have indicated that *no other* exclusions are warranted. *Miller v. Wise Business Forms, Incorporated*, 381 Pa.Superior Ct. 236, 553 A.2d 443 (1989).

The basic purpose of Rule 238 is to decrease congestion within the courts and to encourage settlement. *Sherrill v. Port Authority of Allegheny County*, 383 Pa.Superior Ct. 104, 556 A.2d 450 (1989). In *Jistarri v. Fentress*, 390 Pa.Superior Ct. 209, 568 A.2d 618 (1989), the Superior Court held that, where the plaintiffs delayed the start of the second trial in that case by filing a petition for allocatur, the trial court correctly excluded that time period. However, the court held that the grant of a new trial did not relieve the defendants of their responsibility to make a reasonable settlement offer. The court concluded that "the trial court was under no compulsion to exclude the entire time period from the initial complaint until the jury reached its verdict at the second trial." *Id.*, 390 Pa.Superior Ct. at 215, 568 A.2d at 621.

Furthermore, the court held that any delay caused by overcrowding of the court calendar would be chargeable against the defendant, and that the drafters of Rule 238 did not allow exclusion of periods of delay even for delays not caused by either party.

The school district relies on *Craig* and *Sherrill* in arguing that Rule 238, if used to punish a party who has not acted culpably, would violate due process. However, although the *Sherrill* court, in analyzing the *Craig* decision, recognized the problem which may arise if there is an uncontestable presumption that *all fault* is attributable to the defendant, the court stated, "we observe that Rule 238 has withstood consti-

tutional challenges because the rule as promulgated is responsive to the court's fundamental goal of prompting meaningful negotiations and early settlements so as to unclutter the courts." *Sherrill,* 383 Pa.Superior Ct. at 119, 556 A.2d at 458.

In the present case, because the trial court properly excluded the time periods of delay caused by Giosa, which were agreed upon by both parties, and because the school district did not make a settlement offer, the trial court was not required to make any other exclusions of time periods under Rule 238.

This court notes that in *Woods v. Commonwealth of Pennsylvania Department of Transportation,* 531 Pa. 295, 612 A.2d 970 (1992), the Supreme Court, in construing a rule of civil procedure, held that, under Pa.R.C.P. No. 238, delay damages should be calculated based on the total verdict award and not reduced by calculation based on the amount the plaintiff is legally entitled to recover, because the language in Rule 238 state that "damages for delay shall be added ... in the *verdict* of a jury."

The Supreme Court reasoned that if the drafters of Rule 238 wanted to base delay damages on the amount recoverable and not the total verdict, "the drafters could have chosen to use the phrase "amount recoverable" or some such limiting language; they chose not to. We are not now free to add that language ..."

Because Giosa did not raise the issue of recalculating the delay damages in accordance with *Woods,* and because the trial court decided the present case before the Supreme Court decided *Woods,* we will not remand for a recalculation of the delay damages.

### 12. *Giosas' Motion for Sanctions*

The Giosas also have filed a motion for sanctions, alleging that the school district violated the Pennsylvania Rules of Appellate Procedure. Specifically, the Giosas argue that the district violated: 1) Pa.R.A.P. 124(a)(3), which states that the letterings in a brief shall not be smaller than typewriting pica

nor closer than double spacing; 2) Pa.R.A.P. 2116, which requires that the statement of the questions involved not ordinarily exceed 15 lines and may never exceed one page; 3) this Court's order of June 30, 1992, which denied a waiver of Pa.R.A.P. 2116 and directed appellant to "conform to the requirements" of that rule; 4) Pa.R.A.P. 2119(a)'s requirement that the statement of the questions involved reflect the number of arguments contained in the body of the brief; and 5) Pa.R.A.P. 2117(b), which requires that the statement of the case not contain any argument.

This court concludes that although Rule 2116's requirement is that a brief's statement of the questions involved should not *ordinarily* exceed 15 lines, the district at least violated Rule 124's requirement of double spacing, because the district single-spaced the statement of questions. The district thus contravened the terms of the Pa.R.A.P. 124(a)(3).

Thus, this court will grant the Giosas' motion for sanctions, in the amount of $100.00.

Accordingly, the decision of the Court Of Common Pleas is affirmed in part and reversed in part.

## *ORDER*

NOW, August 5, 1993, the decision of the Court of Common Pleas of Philadelphia, dated March 25, 1992, at No. 2270, is affirmed, and this case is remanded to the trial court solely to recalculate damages in the particular respects specified in this opinion.

This court further grants the Giosas' Motion for Sanctions against the district, in the amount of $100.00, to be paid into court, for failing to comply with Pa.R.A.P. 124(a)(3).

Jurisdiction relinquished.

Kelley, J., dissents.