Harold **LEONARD** and Angela Leonard, his wife, Appellants,

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION; and Perini Corp.; and Peter Kiewit and Son Company; and Kiewit Eastern Co., incorrectly identified as Kiewit Eastern Corporation; and Kiewit/Perini, a Joint Venture; and High Steel Structures, Inc.; and Cornell and Company; and Construction Methods and Coordination, Inc. (CMC).**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1998.

Decided Dec. 30, 1998.

Reargument Denied Feb. 22, 1999.

---

Louis A. Perez, Jr., Philadelphia, for appellants.

Jeffrey N. German, Philadelphia, for appellee, Kiewit/Perini.

Victoria M. Komarnicki, Philadelphia, for appellee, DOT.

Anne Manero, Philadelphia, for appellee, High Steel.

Before KELLEY, J., LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

KELLEY, Judge.

Harold and Angela Leonard appeal from an order of the Court of Common Pleas of Delaware County (trial court). The trial court's order denied the Leonards' motion for post-trial relief requesting the removal of the compulsory nonsuits entered in favor of all defendants. We affirm.

The Pennsylvania Department of Transportation (DOT), entered into a contract with Kiewit Eastern Company and Perini Corporation (Kiewit/Perini) on June 14, 1988 for the improvement of Interstate 476 through Delaware County. The contract required Kiewit/Perini to demolish existing structures and to rebuild various bridges along Interstate 476, including the Chester Road Bridge. Subsequently, Kiewit/Perini entered into a subcontract with High Steel Structures, Inc. (High Steel) for fabrication of the steel to be used in the bridges and the erection of the steel during the construction of the bridges. High Steel then subcontracted the actual erection of the steel to Cornell and Company (Cornell) [1], who employed Harold Leonard (Leonard) as an ironworker.

While helping a fellow worker carry a plank across the upper flange of an I-beam on the Chester Road Bridge, Leonard fell approximately forty feet to the street. Leonard sustained various injuries to his back and right elbow. At the time of the accident, Leonard was wearing a safety belt, but it was not connected to any safety device such as a static safety line. In addition, the construction site did not have a safety net below the work area.

As a result of the fall, Leonard and his wife commenced a civil action for negligence against DOT which owned the construction site, Kiewit/Perini, general contractor for the construction project, and Cornell. Kiewit/Perini joined High Steel, as an independent contractor, alleging that High Steel is obligated to indemnify Kiewit/Perini pursuant to an indemnification provision in their subcontract. Leonard later added Construction Methods and Coordination, Inc. (CMC) as a defendant alleging that it failed to in-

---

1. Cornell is currently in the midst of bankruptcy proceedings and reorganization.

spect and monitor the construction site pursuant to its general contract with DOT.

The complaint asserted that Leonard sustained his injuries because of unsafe conditions at the construction site and the absence of necessary safety precautions. Leonard averred that each defendant had a duty to provide a safe working environment, and that each negligently failed to properly and reasonably inspect the work area, thereby causing the accident.

Leonard originally filed the civil action in the Court of Common Pleas of Philadelphia County, but a change of venue moved the case to Delaware County. The trial court consolidated all matters in the case, including cross-claims and indemnification claims, by order dated March 1, 1993. Eventually, the trial court ordered High Steel to indemnify and defend Kiewit/Perini and DOT. The trial court certified the issue for appellate review which this court denied. The trial court also denied defendants' various motions for summary judgment and commenced a jury trial on October 16, 1995. At the close of evidence, and after reargument of the motions, the trial court granted compulsory nonsuit in favor of all defendants on October 19, 1995.[2]

■ Leonard filed timely post-trial motions which the trial court denied in an order and opinion dated April 3, 1997. Leonard then filed the instant appeal with this court presenting the following issues for our review[3]: (1) whether the trial court failed to follow and apply this court's decision in *Donaldson v. Department of Transportation*, 141 Pa.Cmwlth. 474, 596 A.2d 269 (Pa. Cmwlth.1991), *petition for allowance of appeal denied*, 530 Pa. 667, 610 A.2d 46 and 531 Pa. 648, 612 A.2d 986 (1992) and thus failed to find that Kiewit/Perini and the subcontractor High Steel breached their separate and independent duties to Leonard to make certain that the workplace was safe and in compliance with fall protection and

other regulations as required in their contract and pursuant to Occupational Safety and Health Administration (OSHA) regulations; (2) whether CMC's contract with DOT, to provide inspection services and to monitor for safety and OSHA compliance, makes it liable to Leonard when CMC failed to provide such inspection or monitoring or to assure OSHA compliance, notwithstanding the fact that DOT did not specifically request such safety monitoring services at the job site on the day of the accident; (3) whether DOT is subject to liability for failing to design the I-beams used in the highway project in accordance with OSHA safeguards; and (4) whether the evidence fails to show as a matter of law that Leonard was contributory negligent or assumed any risk.

Initially, we note that Leonard failed to raise the third and fourth issues in either the post-trial motion for relief filed pursuant to Pa.R.C.P. No. 227.1 or in the concise statement of matters complained of on appeal. Only the issues that a party specifically raises in post-trial motions are preserved and subject to review by an appellate court. Pa. R.A.P. 302; *Giosa v. School District of Philadelphia*, 157 Pa.Cmwlth. 489, 630 A.2d 511, 516 (Pa.Cmwlth.1993), *overruled in part on other grounds* by *Fernandez v. City of Pittsburgh*, 164 Pa.Cmwlth. 662, 643 A.2d 1176 (Pa.Cmwlth.1994). We will now address Leonard's remaining issues.

Leonard asserts that *Donaldson* stands for the proposition that all contractors and subcontractors of a federally aided highway construction project must, by virtue of federally mandated contractual provisions, make certain that the workplace is safe and in compliance with applicable federal, state, and local safety laws, in particular, OSHA regulations. Because this duty cannot be delegated to another party, Leonard contends that, even though neither Kiewit/Perini nor High Steel were involved in the erection of the steel, each entity had a duty to ensure a safe

2. The trial court did conclude that Cornell is responsible for Leonard's work-related injuries under the Workers' Compensation Act, Act of June 2, 1915, P.L.736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

3. A compulsory nonsuit may be affirmed only if, giving the appellant the benefit of every reason-

able inference and resolving all evidentiary conflicts in his or her favor, the facts and circumstances nonetheless lead to the clear conclusion that no liability exists. *Berman v. Southeastern Pennsylvania Transportation Authority*, 698 A.2d 1362, 1363 (Pa.Cmwlth.1997), citing *Harvilla v. Delcamp*, 521 Pa. 21, 555 A.2d 763, 764 (1989).

workplace.[4] Accordingly, Leonard argues that his accident occurred because Kiewit/Perini and High Steel independently failed to make certain that safety nets or properly located safety lines were in place as required by OSHA regulations. We are unwilling to accept this proposition.

In *Donaldson,* the plaintiff sustained permanent injuries after a board on a scaffold broke and he fell sixty-five feet onto an embankment. Based on the general contractor's control over the work site, we concluded that the general contractor owed a duty to the plaintiff to insure that the proper type of wood would be used in the construction of the scaffolding. *Donaldson,* 596 A.2d at 273–74. When the evidence of record revealed that the general contractor used construction-grade planking instead of scaffold-grade planking in a scaffold over which the workers walked, this court properly reversed the trial court's grant of judgment n.o.v. in favor of the general contractor. *Id.*

■ Here, neither Kiewit/Perini nor High Steel had any involvement in the erection of the steel for the Chester Road Bridge. Reproduced Record (R.R.) at 264. As a result, neither party could have committed any OSHA violations because they did not have control over the construction site or Leonard's work activities. In fact, Leonard testified that Cornell maintained exclusive control over the steel erection at the construction site, and that he never received any instruction from Kiewit/Perini or High Steel personnel. R.R. at 501a–04a, 545a.

In addition, Kiewit/Perini assumed DOT's obligation to comply with the applicable OSHA regulations pursuant to the contract it entered into with DOT. R.R. at 114a–18a. Kiewit/Perini in turn contracted with High Steel for the fabrication and erection of the steel. Under that contract, High Steel agreed to accept all responsibility for safety precautions relating to the work site. R.R. 207a–09a. High Steel then entered into a subcontract with Cornell to erect the steel at the work site. Specifically, section 11 of the subcontract between High Steel and Cornell provides in relevant part:

> [Cornell] agrees to conduct and carry on its work in such a manner as to avoid injury or damage to persons or property including its own work and be strictly responsible for damage to persons or property by failure so to do or by [Cornell's] negligence, and shall assume as to its work hereunder all obligations imposed on [High Steel] under the provisions of the General Contract....

R.R. at 900a.

■ It is an accepted rule that the duty to provide safety precautions at a construction site can be delegated to a subcontractor. *Egan,* 566 A.2d at 1250–52 (Pa.Super.1989), *Weiser v. Bethlehem Steel Corp.,* 353 Pa.Super. 10, 508 A.2d 1241, 1245 (Pa.Super.1986). In addition, the general rule in this Commonwealth is that one who employs an independent contractor is not responsible for the negligence of that independent contractor. *Donaldson,* 596 A.2d at 274. Based on our review of the contracts, it is clear that Kiewit/Perini delegated its duty to provide safety precautions to High Steel and High Steel subcontracted the duty to Cornell. Assigning liability to these parties for Leonard's injuries without the existence of a cognizable duty would be contrary to existing law. Furthermore, it would needlessly increase the cost of bridge and road construction by requiring all contractors to be insured against the negligence of third parties. *Egan,* 566 A.2d at 1252.

Next, Leonard contends that CMC assumed an independent and inescapable obligation to monitor for safety and OSHA compliance at the work site pursuant to the contract CMC entered into with DOT. Because ironworkers regularly walked unsecured on the top flange of the I-beams, Leonard believes that CMC should have been aware of OSHA violations and taken appropriate remedial action. When CMC failed to

4. Leonard relies on 29 C.F.R. §§ 1926.10 and 1926.16 in making this assertion. These OSHA regulations, however, do not define how liability is to be assigned amongst contractors at a construction site. Rather, the regulations establish which party or parties are subject to the enforcement provisions of the Occupational Health and Safety Act. *See Egan v. Atlantic Richfield Company,* 389 Pa.Super. 290, 566 A.2d 1249, 1251–52 (Pa.Super.1989), *petitions for allowance of appeal denied,* 525 Pa. 630, 578 A.2d 925, 525 Pa. 634, 578 A.2d 929 and 525 Pa. 636, 578 A.2d 930 (1990).

perform their duty, it became liable for Leonard's injuries. Again, we disagree.

CMC is neither the general contractor nor a subcontractor at the Chester Road Bridge location and, therefore, no contractual duty arose regarding the safety at the construction site. Furthermore, CMC only supplemented DOT's staff in inspecting the bridge and road construction on the entire Interstate 476 project and ultimate responsibility for safety inspections rested with DOT.[5] R.R. at 167a. Consequently, no legal duty on behalf of CMC existed on the date of Leonard's accident and, therefore, no liability can be assigned to this entity.

Accordingly, the trial court's order denying Leonard's motion for post-trial relief is affirmed.

### ORDER

AND NOW, this 30th day of December, 1998, the order of the Court of Common Pleas of Delaware County, dated April 3, 1997, at No. 92–2971, is affirmed.

Judge LEADBETTER, concurs in the result only.

---

**5.** We note that the trial court determined that DOT was excused from any liability as a matter of law due to sovereign immunity. Leonard did not appeal this determination.